UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

           Plaintiff,

v.                                              Case No. 22-cv-706-pp

MEGAN LEBERAK, ANDREA BLEECKER,
ROBERT WEINMAN, CHERYL JEANPIERRE,
ANN YORK and GWENDOLYN VICK,

           Defendants.

**ORDER WAIVING PLAINTIFF'S PAYMENT OF INITIAL PARTIAL FILING FEE, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Timothy Durley, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide adequate treatment for his migraines and nosebleeds. This order waives the requirement that the plaintiff pay an initial partial filing fee, resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 8, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $1.53. Dkt. No. 8. On July 20, 2022, the court received a letter from the plaintiff, in which he said he was unable to pay the $1.53 initial partial filing fee because he had no money in his regular institutional trust account and only $0.24 in his release account. Dkt. No. 9. The plaintiff asked the court to dismiss this case so that he could re-file in the future when he had more money, but he also asked the court to allow him to proceed without paying the initial partial filing fee. Id. The court ordered the plaintiff to clarify whether he wanted to dismiss the case or whether he wanted to proceed without paying an initial partial filing fee. Dkt. No. 10. The court also ordered that, if the plaintiff wanted to proceed, he must submit his most recent institutional trust account statement showing his inability to pay the initial partial filing fee. Id.

On August 4, 2022, the court received a letter from the plaintiff clarifying that he had filed his institutional trust account statement and wanted to proceed in this lawsuit. Dkt. No. 11. The plaintiff also filed his institutional trust account statement for July 2022. Dkt. No. 12. That statement showed a balance of $0.00 in the plaintiff's regular account and $0.24 in his release account, as he had told the court in his first letter. Id. at 1.

The court has the authority to waive the initial partial filing fee under 28 U.S.C. §1915(b)(4) if the plaintiff lacks both the "assets" and the "means" to pay it. The Court of Appeals for the Seventh Circuit has explained that "[i]t is not

2
Case 2:22-cv-00706-PP    Filed 11/02/22    Page 2 of 17    Document 14

enough that the prisoner lack assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), overruled in part on other grounds by Walker v. O'Brien, 216 F.3d 626, 628–29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, incarcerated persons easily could avoid paying the initial partial filing fee by spending what was in their trust accounts before filing a lawsuit. The court construes an incarcerated person's "means" broadly; an incarcerated person may lack "assets" but still have "means" to pay the fee.

According to his trust account statement, the plaintiff has no money in his regular trust account and only $0.24 in his release account. His request to proceed without prepaying the filing fee shows that he has no assets, no cash or bank account and no source of income.[1] Dkt. No. 2. The court concludes that the plaintiff has neither the assets nor the means to pay the initial partial filing fee, and it will not require him to pay one. The court will waive the initial partial filing fee and will grant the plaintiff's motion for leave to proceed without

---

[1] In the section of the plaintiff's request to proceed without prepaying the filing fee entitled "Litigation History," the plaintiff listed three cases: 20-cv-1889, 20-cv-1890 and 21-cv-883. Dkt. No. 2 at 3. That is not a complete recitation of the plaintiff's litigation history. Between December 2020 and the date on which he filed this case, the plaintiff filed *ten* cases, all of which were or are assigned to this court: 20-cv-1889, 20-cv-1890, 21-cv-153, 21-cv-154, 21-cv-281, 21-cv-628, 21-cv-822, 21-cv-883, 21-cv-1263 and 22-cv-585. The court already has dismissed 20-cv-1889, 21-cv-153, 21-cv-281 and 21-cv-628. The court advises the plaintiff to be truthful about his pending or dismissed cases in this court or any other. His failure to provide truthful, accurate information about his litigation or litigation history could result in the court dismissing any case in which he is not truthful.

3
Case 2:22-cv-00706-PP   Filed 11/02/22   Page 3 of 17   Document 14

prepaying the filing fee. Dkt. No. 2. He must pay the full filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated plaintiffs seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Registered Nurses Megan Leberak, Andrea Bleecker, Ann York and Gwendolyn Vick; Health Services Manager Robert Weinman; and Doctor Cheryl Jeanpierre. Dkt. No. 1 at 1–2. The complaint alleges that all the defendants work at Waupun. Id.

The plaintiff alleges that on March 16, 2022, while he was in the Restricted Housing Unit at Waupun, he began a hunger and water strike "due to [him] being poison[ed]." Id. at 3. On March 20, 2022, he attempted to walk to the door of his cell to be taken for his wellness assessment, collapsed and hit his head on the door. Id. He says he did not lose consciousness and heard staff at his door calling out to him. Id. He alleges that because he was dehydrated and malnourished, he could not speak or move. Id. The plaintiff says that "a

5

suite up [*sic*] team was assembled and [he] was wheeled in a wheelchair to the nurse's station." Id. at 3–4.

The plaintiff saw Leberak and made her aware that he had collapsed and hit his head on his cell door and that his head hurt. Id. at 4. Leberak allegedly replied, "Well you have excedrin an[d] ib[u]profen[,] take that." Id. The plaintiff told Leberak that "this same situation happened in the pas[t]" and that those medications "didn't work, along with [his] nastal spray." Id. Leberak told the plaintiff she could not do anything "and proceeded to assess [his] hunger-water strike." Id. The plaintiff says Leberak did not provide him an ice bag or examine his head injury. Id.

The plaintiff says he saw Bleecker a couple of days later in response to his requests for health services, in which he complained about "severe migra[i]ne headach[e]s an[d] nose bleeds, due to [him] hitting [his] head on the door." Id. The plaintiff says he made Bleecker aware that he was having severe migraine headaches and nose bleeds "due to [his] head injur[y] on 3-20-22." Id. The plaintiff says that Bleecker replied, "What do you want me to do, [I] can scheduled [*sic*] you to see Jeanpierre, other than that you have your excedrin an[d] ib[u]profen." Id. The plaintiff said he "made Bleecker aware that in the pas[t] this same situation happened and [his] exedrin an[d] ib[u]profen didn't work, along with [his] nastal spray." Id. at 4–5. Bleecker said that she couldn't do anything and that the plaintiff was scheduled to see Jeanpierre. Id. at 5.

The plaintiff alleges that on March 24, 2022, he saw Jeanpierre. Id. He says that he made Jeanpierre aware that he was having severe migraines and

nose bleeds due to hitting his head on the door on March 20, 2022, and asked her to prescribe him stronger medication "and do a cat scan." Id. Jeanpierre allegedly replied, "you look ok to me, no cat scan, no ice bag, and that she can[']t prescribe nothing stronger due to [him] already having excedrin an[d] ib[u]profen." Id. The plaintiff says he "made Jeanpierre aware that in the pas[t] when the same situation happened that the Excedrin an[d] ib[u]profen didn't work along with [his] nastal spray, which she was aware of in the pas[t] concerning this." Id. Jeanpierre allegedly replied, "no not gonna happened [*sic*], since you like filing lawsuites [*sic*] on me, go ahead an[d] file another lawsuit." Id.

The plaintiff says he contacted Weinman about his migraines and nosebleeds and "how [he was] not being provided no ice by for [his] head injuries an[d] cat scan for [his] head injuries and how [he] saw 'Jeanpierre' who did nothing for [his] pain an[d] nose bleeds." Id. He says that "on numberious [*sic*] occasions" he made Weinman aware of his migraines and his bloody nose, and "that the Excedrin an[d] ib[u]profen not working, along with [his] nastal srpay, as it haven't in the pas[t]." Id. at 5–6. Weinman told the plaintiff he "don[']t need no cat scan, an[d] that Jeanpierre stated [he] don[']t need one." Id. at 6. The plaintiff alleges that Weinman "did nothing for [his] severe migra[i]ne headach[e] – nor bloody nose." Id.

The plaintiff filed requests for health services about his issues, and Vick and York "answeared to [his] 'HSU' slips concerning this incident that happened on 3-20-22." Id. The plaintiff alleges Vick and York were "fully aware

of [his] head injurie[s] that occurred on 3-20-22 and failed to act-intervene and provide medical care" for his migraines and nosebleeds. Id. He says the nurses also knew that he hit his head on his cell door "due to [his] hunger-water strike" and that his medications (including his nasal spray) did not relieve his symptoms. Id. The plaintiff alleges that Vick and York failed to intervene and provide him with medical care. Id.

The plaintiff asserts the defendants were deliberately indifferent to his migraines and nosebleeds and failed to act or intervene to provide adequate medical treatment. Id. at 6–7. He seeks $300,000 in compensatory damages from each defendant for each day he was without an ice bag or cat scan and $550,000 in punitive damages from each. Id. at 9. He says he now has "a twi[t]ch in [his] right eyebrow due to [his] head injur[y] on 3-20-22." Id. He also seeks injunctive relief ordering each defendant's "immediate discharge from Waupun Correctional Institution." Id. at 7. He seeks additional injunctive relief ordering the Wisconsin Department of Adult Institutions to change its policies in all prisons to require that all medical personnel in the RHU "wear active body cameras . . . when on tiers or engaging in conversations with a[n] inmate–patient" and to face a monetary fine any time the camera is not active. Id.

C.  Analysis

The court reviews the plaintiff's claims of inadequate medical treatment under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health

8
Case 2:22-cv-00706-PP   Filed 11/02/22   Page 8 of 17   Document 14

Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the incarcerated person must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103.

To satisfy the objective component, the plaintiff must allege that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). It is not enough to allege "'[n]egligence, gross negligence, or even 'recklessness' as that term is used in tort cases.'" Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) (quoting Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987)). The plaintiff must show that the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." Greeno, 414 F.3d at 654 (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

The plaintiff alleges that he fell and hit his head, causing chronic and severe migraines and nosebleeds. He does not describe his nosebleeds or say how frequently he experiences them. But allegations of severe and persistent pain may constitute a serious medical need to satisfy the objective component of an Eighth Amendment claim. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The plaintiff's allegations of severe migraines and nosebleeds likely is sufficient to satisfy the objective component. See, *e.g.*, Howard v. O'Donovan, Case No. 18-cv-1830-PP, 2020 WL 3964842, at *3 (E.D. Wis. July 13, 2020) (citing Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997). The court reiterates that at this early stage of the litigation, it must accept the allegations in the complaint as true. Iqbal, 556 U.S. at 678. Given that, the court finds that the plaintiff's allegations of recurrent and severe migraines and nosebleeds constitutes an objectively serious medical need for the purpose of determining whether he has stated enough facts to proceed past the screening stage. If the case makes it to the summary judgment stage, the plaintiff will be required to provide evidence confirming his symptoms and conditions to survive summary judgment.

The court next addresses whether the complaint's allegations satisfy the subjective component for the plaintiff's claims against each defendant. The plaintiff alleges he saw Leberak immediately after he fell and hit his head and told her he was experiencing migraines and nosebleeds. She told the plaintiff to take his already-prescribed pain medications, but he responded that those medications did not resolve his symptoms and had not helped in the past.

Leberak nonetheless took no other action to treat the plaintiff's symptoms and did not provide simple treatment like an icebag for his pain. The court finds that these allegations, construed liberally and in the plaintiff's favor, are sufficient to state a claim that Leberak disregarded the plaintiff's need for treatment for his serious medical condition. The plaintiff may proceed on an Eighth Amendment claim against Leberak.

The plaintiff says he saw Bleecker a couple of days later and told her about his migraines and nosebleeds. He says that Bleecker, like Leberak, told the plaintiff to continue taking his prescribed medications. He told her those medications had not been effective, but Bleecker told him there was nothing more she could provide. Unlike Leberak, Bleecker took further action to address the plaintiff's concerns: she scheduled him to see Dr. Jeanpierre. The plaintiff saw Jeanpierre only four days after his fall and injury. Those allegations show that Bleecker was not deliberately indifferent to the plaintiff's condition—she scheduled him to see a doctor for further evaluation. These allegations do not suggest Bleecker provided "blatantly inappropriate" mistreatment, as is required to state a claim of deliberate indifference. Greeno, 414 F.3d at 654. The court will not allow the plaintiff to proceed against Bleecker and will dismiss her from this lawsuit.

The plaintiff says he later saw Jeanpierre and requested stronger medication and a cat scan. She allegedly told the plaintiff he "look[ed] ok," did not perform a cat scan, did not provide an ice bag or stronger pain medication and refused to provide any further treatment for his conditions. Dkt. No. 1 at 5.

11
Case 2:22-cv-00706-PP   Filed 11/02/22   Page 11 of 17   Document 14

Jeanpierre then allegedly complained about the plaintiff's previous lawsuits against her and told him to sue her again if he was unhappy. These allegations, if true, suggest that Jeanpierre intentionally refused to provide the plaintiff medical treatment at least in part because he had complained about Jeanpierre in the past and filed a lawsuit against her. That is not an appropriate response to an incarcerated person presenting an objectively serious medical need. Accepting these allegations as true, the court finds that the complaint states an Eighth Amendment claim against Jeanpierre for failing to provide additional medical treatment for the plaintiff's migraines and nosebleeds.

The plaintiff alleges that he contacted Weinman several times about his migraines and nosebleeds and explained that Jeanpierre had not provided him proper treatment. Weinman relied on Jeanpierre's diagnosis that the plaintiff did not need a cat scan and allegedly "did nothing" to address the plaintiff's conditions. Dkt. No. 1 at 6. The complaint does not allege that Weinman personally examined or treated the plaintiff's conditions. It alleges only that he responded to the plaintiff's complaints about his treatment from nurses and Jeanpierre. As the manager of the Health Services Unit, Weinman is not responsible for the treatment decisions of his subordinates, who includes the nurses and doctors who treated the plaintiff. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009) ("[C]hief administrators are ordinarily not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene.")). To be held liable under 42

U.S.C. §1983, Weinman must have known about the nurses' conduct and facilitated, approved or condoned it or "turn[ed] a blind eye" to it. Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).

The complaint does not allege that Weinman was aware of Leberak or Jeanpierre's actions when they occurred and approved, condoned or turned a blind eye to them. It alleges that the plaintiff told Weinman about what he believed to be inadequate treatment days *after* he saw those medical professionals. Weinman declined to intervene and deferred to Jeanpierre's treatment decisions. As an administrator, Weinman "was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate]." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). The complaint alleges that Weinman responded to the plaintiff's health service requests; he did not ignore him. That Weinman learned after the fact about what had happened and did not order other treatment is not enough to hold him liable for the nurses or doctor's conduct. The complaint does not state a claim of deliberate indifference against Weinman and the court will dismiss him.

The complaint contains few allegations against Vick and York. It does not allege that either of these nurses personally saw, examined or treated the plaintiff's migraines and nosebleeds. It alleges only that they responded to the plaintiff's requests to the Health Service Unit and that they did not intervene to provide him medical treatment. The plaintiff does not say when he filed these requests or what the nurses' responses were. Nor did he include with his complaint copies of his requests or the nurses' responses. He merely asserts

that the nurses "failed to act-intervene and provide medical care." Dkt. No. 1 at 6.

These allegations are insufficient to state an Eighth Amendment claim against Vick or York. The court can infer that the plaintiff wrote his requests to the Health Services Unit after Leberak, Bleecker and Jeanpierre saw and treated him. That means two nurses and a doctor personally had examined and treated the plaintiff before Vick and York responded to his complaints about his treatment. The Seventh Circuit has held that "[a]s a matter of professional conduct, nurses may defer to instructions given by physicians unless 'it is apparent that the physician's order will likely harm the patient.'" Holloway v. Delaware Cty. Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting Berry, 604 F.3d at 443). It must be "obvious" to the nurse that following the physician's orders will create a risk to the plaintiff's health. Rice *ex rel.* Rice v. Corr. Med. Servs., 675 F.3d 650, 683 (7th Cir. 2012). The complaint does not suggest that Vick or York had reason to believe Jeanpierre's medical instructions were likely to harm the plaintiff. It says only that they knew about the plaintiff's issues, responded to his requests for treatment and did not take any further action. Those allegations, even liberally construed, are insufficient to state a claim that Vick and York were deliberately indifferent to a substantial risk to the plaintiff's health or safety; the court will dismiss them.

In addition to damages, the plaintiff seeks an injunction ordering that the defendants be terminated from their positions at Waupun. The court does not have the authority to provide that relief. If the plaintiff is dissatisfied with

the medical treatment he received, he may file a complaint about the nurses or doctor with the appropriate licensing board, as the court has explained in his other cases. See 20-cv-1889, Dkt. No. 12 at 6; 20-cv-1890, Dkt. No. 12 at 6.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the initial partial filing fee is **WAIVED**; the plaintiff is not required to pay it before proceeding.

The court **DISMISSES** defendants Andrea Bleecker, Robert Weinman, Ann York and Gwendolyn Vick.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Megan Leberak and Cheryl Jeanpierre. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the full **$350** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the

plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin this 2nd day of November, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**